UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| _____ ) | |
| KYLE BURNS and RUBY HAYES, on behalf ) | |
| of themselves and all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-18194-KMW-AMD |
| ) | |
| TD BANK, N.A., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kyle Burns and Ruby Hayes, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), on behalf of themselves and the classes of persons preliminarily defined below, bring this Amended Class Action Complaint against Defendant TD Bank, N.A. ("TD" or "TD Bank") as follows:

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant TD Bank ("TD" or "Bank") arising from the unfair and improper assessment and collection of overdraft fees on transactions that should not have been assessed a fee.[1]

2.      This practice breaches contractual promises made in TD's contracts.

3.      The language in TD's checking account contract documents ("Account Documents") which address overdraft fees ("OD Fees") promise that TD will reduce balances to reflect debit card transactions immediately, thus precluding such approved debit card

---

[1] According to TD's Personal Fee Schedule (**Exhibit A** hereto), a $35 overdraft is charged regardless of whether the item is returned for insufficient funds or paid into overdraft, subject to a limit of five (5) such fees per day, per account.

transactions from being assessed an OD Fee. TD nevertheless charges OD Fees on these transactions.

4.      TD also breaches its duty of good faith and fair dealing when it charges OD Fees even when customers did not actually have insufficient funds because the funds were taken from the available balance and held at the time of approval.

5.      TD's customers have been injured by TD's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with TD.

6.      On behalf of themselves, the Class, and the Subclasses, Plaintiffs seek damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

7.      Plaintiff Kyle Burns ("Mr. Burns") is a citizen and resident of New York.

8.      Plaintiff Ruby Hayes ("Ms. Hayes") is a citizen and resident of New Jersey.

9.      Defendant TD Bank is an American national bank and subsidiary of the Canadian multinational Toronto-Dominion Bank. TD is headquartered in Cherry Hill, New Jersey. TD has approximately 1,300 branches and 1,900 ATM machines in the United States. By assets, TD is now ranked in the top 10 among U.S. banks and provides banking services to 6,500,000 east coast customers from Maine to Florida.

10.      TD Bank has 242 branches in New Jersey and provides banking services to over 12% of the state's bank customers.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter presented by this Amended Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of

any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000, exclusive of interest and costs.

12.    By removing this case to this Court, Defendant alleges that the total claims of members of the proposed class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiffs are citizens of the New York and New Jersey, whereas Defendant is a citizen of New Jersey for purposes of diversity. The proposed class will include consumers from dozens of states. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, most of the members of the proposed class are citizens of a state other than New Jersey, where this action is being filed, and the total number of members of the proposed class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

13.    Venue is proper in the District of New Jersey pursuant to the facts described above which include the presence of the TD Bank headquarters, hundreds of bank branches, and hundreds of thousands of customers in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

I.    **TD CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT**

A.    **Overview of Claim**

14.    TD issues debit cards to its checking account customers, including Plaintiffs, which allow its customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

15.    Pursuant to its Account Documents, TD charges fees for debit card transactions that purportedly result in an overdraft.

3

16.     Plaintiffs bring this cause of action challenging TD's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

17.     Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, TD immediately reduces accountholders' checking accounts for the amount of the purchase, purports to set aside funds to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because TD has already sequestered these funds for payment.

18.     However, TD still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

19.     Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, TD later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of transactions are APPSN Transactions.

20.     TD maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, TD sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

21.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. Thus, many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

22.     Still, despite keeping those held funds off-limits for other transactions, TD improperly charges OD Fees on the APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

23.     The Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because

consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights." Thus, for at least several years, TD has been aware that the practice challenged in this case was deemed unfair by United States banking regulators. Notably, TD Bank does not use this practice in Canada where it also has massive banking operations.

24.     There is no justification for this improper practice, other than to maximize TD's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But TD is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But TD is not content with these millions in OD Fees. Instead, it seeks to seize millions *more* in OD Fees by also assessing fees on APPSN Transactions.

25.     Besides being unfair and unjust, these practices breach contractual promises made in TD's adhesion contracts—contracts which fail to inform accountholders about, and in fact misrepresent, the true nature of TD's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

26.     In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that TD will only charge OD Fees on transactions that have insufficient funds to "cover" that debit card transaction.

27.     In short, TD is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

6

B.    **Mechanics of a Debit Card Transaction**

28.    A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from TD. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to TD, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

29.    At this step, if the transaction is approved, TD immediately reduces the balance of funds in the customer's account by the amount of the transaction and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

30.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009). TD Bank does not adhere to this understanding of debit holds, but rather fails to sequester the held funds and thus allows the approved debit card transaction to be assessed an OD Fee.

31.    Usually one to three business days after the hold has been instituted, funds in the amount of the approved transaction are actually transferred from the customer's account to the merchant's account.

32.     TD (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization. After that, TD is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when TD may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

33.     There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

**C.      TD's Account Documents**

34.     Plaintiffs have TD checking accounts, which are governed by TD's Account Documents.

35.     Among the Account Documents which govern Plaintiffs' relationships with TD is a document entitled, *Personal Deposit Account Agreement* ("Account Agreement"), attached hereto as **Exhibit B**.

36.     The Account Agreement states in pertinent part that TD uses the available balance to determine when overdrafts occur, and when an accountholder uses a debit card funds are deducted to cover those purchases:

**For (i) Checking Accounts and (ii) Money Market Accounts with check access, items are processed as follows:**

8

a)      First, items, including both deposits and withdrawals, are added to and deducted from your available Account balance in chronological date and time order based on the information that we receive for each item. The following transaction fees also will be deducted in date and time order based on when they are assessed: wire transfer fees, deposit return fees, returned item fees, and overdraft fees. For some items, we do not receive date and time information. We assign these items a date and time, which may vary from when the transactions were conducted. All checks drawn upon your account that are not cashed at a TD Bank Store are assigned a time of 11pm on the date we receive them. If multiple items have the same date and time information, they will be processed in the following order: (i) deposits first; (ii) checks drawn upon your account next, from lowest to highest check number, and then (iii) other withdrawals, from lowest to highest dollar amount. For purposes of this section (a), **withdrawals include transactions that have been presented for payment as well as pending debit card, ATM or electronic transactions that have been authorized but not yet presented to us for payment**. Please see the additional details below for more information regarding pending transactions.

Exhibit B at 7-8 (emphasis added).

**Additional    details    regarding    pending    transactions    for all Accounts**:

When you use a debit card, ATM card, or other electronic means to make withdrawals, we may receive notice of the transaction before it is actually presented to us for payment. That notice may be in the form of a merchant authorization request or other electronic inquiry. **Upon receipt of such notice, we treat the transaction as "pending" at the time we receive notice, and subject to certain exceptions, we deduct the amount of the pending transactions from your available Account balance to determine the amount available to pay other items presented against your Account.** The amount of a pending transaction may not be equal to the amount of the actual transaction that is subsequently presented for payment and posted to your Account. If a pending transaction is not presented for payment within three (3) Business Days after we receive notice of the transaction, we will release the amount of the pending transaction. We do not deduct the amount of pending debit card transactions from your available Account balance for certain categories of merchants that frequently request authorization for amounts in excess of

the likely transaction amount, including hotels and resorts, airlines and cruise lines, car rental companies, and automated gas pumps (pay at the pump).

*Id.* at 8-9 (emphasis added).

37.    The Account Agreement further clarifies that holds are placed for "pending" transactions—and those held funds cannot be used for *other* transactions:

Overdraft fees are not charged on "pending" transactions, although pending transactions reduce your available Account balance to pay other transactions and may result in the assessment of overdraft fees for those transactions.

*Id.* at 10.

38.    The Important Information document, **Exhibit C** hereto, makes the same representations:

An overdraft occurs when your available balance is not sufficient to cover a transaction, but we pay it anyway. **Your available balance is reduced by any "pending" debit card transactions (purchases and ATM withdrawals)** and includes any deposited funds that have been made available pursuant to our Funds Availability Policy.

(emphasis added).

39.    In the Important Information document, TD also repeatedly represents that "authorization and payment" are coterminous and that overdrafts are determined at the moment of authorization:

What is the Standard Overdraft Service that is included with my account?

**We may, at our discretion, authorize and pay overdrafts** for the following types of transactions:
• Checks and other transactions made using your checking account number • Store payments, transfers and withdrawals • Automatic bill payments • Online Banking transfers and payments made through Bill Pay • Recurring debit card transactions • External transfers to other institutions and payments to other people • Telephone transfers

**We may not authorize and pay overdrafts for the following types of transactions** unless you ask us to:

• One-time debit card transactions • ATM transactions If you want TD Bank to authorize and pay overdrafts on ATM or one-time debit card transactions, you can elect in TD Bank's other overdraft protection and enroll in TD Debit Card Advance.

**If we do not authorize and pay an overdraft for an ATM or one-time debit card transaction, your transaction will be declined and no fee assessed.** If a merchant receives authorization for a purchase, TD Bank cannot return that transaction unpaid even if your account is not in good standing.

**We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction**. If a transaction is returned unpaid, an Overdraft-Return fee may be assessed (as outlined below).

[…]

When you enroll in TD Debit Card Advance, **we may authorize and pay one-time debit card or ATM transactions when funds are not available in your account**, but it may result in a fee. If you do not enroll, overdraft ATM and one-time debit card transactions will be declined and no fee is assessed. **If you want TD Bank to authorize and pay overdrafts on your one-time debit card or ATM transactions** (or change your enrollment status at any time), stop by a TD Bank, call us at 1-888-751-9000, or connect to tdbank.com. Please read below for information about our overdraft practices.

(emphasis added).

40.    Just as the Important Information document states that overdrafts are determined at the time of authorization of a debit card transaction, so too does the Account Agreement make clear that TD elects to pay an overdraft—which, for debit card transactions, always occurs at the moment of authorization:

> We do not have to allow you to make an overdraft. It may be a crime to intentionally withdraw funds from an Account when there are not enough funds in the Account to cover the withdrawal or when the funds are not yet available for withdrawal.

Ex. B, at 10.

41.    For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to cover those transactions—yet TD assesses OD Fees on them anyway.

42.     The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is never true for APPSN Transactions.

43.     APPSN Transactions are always initiated at a time when there are sufficient available funds in the account.

44.     In fact, TD actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses a posting process described below.

45.     All the above representations and contractual promises are untrue. In fact, TD charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that TD may impose OD Fees on any APPSN Transactions.

46.     The Account Documents misstate TD's true debit card processing and overdraft practices.

47.     First, and most fundamentally, TD charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions, despite contractual representations that TD will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

48.     TD assesses OD Fees on APPSN Transactions that **_do_** have sufficient funds available to cover them throughout their lifecycle.

49.     TD's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between TD's

12

actual practice and the contract causes accountholders like Plaintiffs to incur more OD Fees than they should.

50.      When a debit card transaction is authorized for APPSN Transactions, sufficient funds are sequestered from the account immediately, consistent with standard industry practice.

51.      Because these withdrawals take place upon initiation, these sequestered funds should not be used later to pay other transactions or fees assessed by the Bank. But that is what TD does when it utilizes sequestered funds during its batching posting process.

52.      In reality, TD's actual practice is to essentially run the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

53.      At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, TD cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

54.      Upon information and belief, during its nightly batch posting process, TD releases the sequestered funds held for an APPSN Transaction and allows these funds to be used for other transactions, despite the fact that its Account Documents do not properly disclose this process.

55.      This undisclosed step allows TD to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which TD specifically set aside money to pay them.

56.      This discrepancy between TD's actual practices and the contract causes accountholders to incur more OD Fees than they should.

57.    In sum, there is a huge gap between TD's practices as described in the Account Documents and TD's practices in reality.

**D.    TD Abuses Contractual Discretion**

58.    TD's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the Account Documents. In addition, TD exploits contractual discretion to the detriment of accountholders when it uses these policies.

59.    Moreover, TD uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

60.    TD uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could result in OD Fees.

**E.    Reasonable Accountholders Understand Debit Card/POS Transactions Are Debited Immediately**

61.    The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate deduction and holding of funds for debit card/POS transactions. That is because, if funds are immediately debited from the balance and held, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions). If funds are immediately debited from the available balance, then they are necessarily available to be applied to the debit card transactions for which they are debited.

62.    TD is aware that this is precisely how accountholders reasonably understand such transactions to work.

63.    TD knows that many accountholders prefer debit cards for this very reason. Research indicates that accountholders prefer debit cards as a budgeting device because they do

not allow debt like credit cards do, and because the money comes directly out of a checking account.

64.    Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, Consumer Action (Jan. 14, 2019), https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card (last visited July 7, 2021).

65.    Thus TD's accountholders, including Plaintiffs, believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

**F.    Plaintiff Kyle Burns' Debit Card Transactions**

66.    On May 10, 2021, Mr. Burns was assessed OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted from his available balance immediately when the transactions were authorized prior to that day. The debit card transactions for which he was assessed OD Fees were authorized by TD Bank three or fewer days prior to the day they settled.

67.    Upset with being assessed OD Fees for transactions that were approved against positive funds, Mr. Burns contacted TD on May 13, 2021 to complain.

68.    Mr. Burns spoke with a TD employee named Allyssa by phone regarding his complaint.

69.     During his conversation with Allyssa, she acknowledged that there was a lack of adequate disclosure regarding this practice and that this issue has been escalated by other customers previously.

70.     Allyssa also stated that the multiple, overlapping contractual documents from TD—like the Deposit Agreement, Fee Schedule, and Debit Card Advance disclosure—were confusing and that TD's actual policies were "not a widely understood process" and was "very open to misunderstanding or lack of awareness."

**G.      Plaintiff Ruby Hayes's Debit Card Transactions**

71.     As an example, on November 30, 2017, and December 1, 2017, Ms. Hayes was assessed OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted from her available balance immediately when the transactions were authorized prior to that day. The debit card transactions for which she was assessed OD Fees were authorized by TD Bank three or fewer days prior to the day they settled.

**CLASS ACTION ALLEGATIONS**

72.     Plaintiffs bring this action individually and on behalf of all others similarly situated pursuant to Rule 23. The Class is preliminarily defined as:

> All accountholders who, within the applicable statute of limitations, were charged OD Fees on APPSN Transactions in a TD checking account.

Plaintiff Kyle Burns also brings his claims on behalf of a Subclass of New York accountholders with the subclass to be defined as follows:

> All New York accountholders who, within the applicable statute of limitations, were charged OD Fees on APPSN Transactions in a TD checking account.

Plaintiff Ruby Hayes also brings her claims on behalf of a Subclass of New Jersey accountholders with the subclass to be defined as follows:

> All New Jersey accountholders who, within the applicable statute of limitations, were charged OD Fees on APPSN Transactions in a TD checking account.

73.    Excluded from the Class and Subclasses are Defendant, Defendant's subsidiaries and affiliates, its officers, directors, and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

74.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and Subclasses and/or to add classes or subclasses, if necessary, before this Court determines whether certification is appropriate.

75.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class and Subclasses. These questions predominate over questions that may affect only individual class members because TD has acted on grounds generally applicable to the Class and Subclasses. Such common legal or factual questions include, but are not limited to:

a)    Whether TD improperly charged OD Fees on APPSN Transactions;

b)    Whether the conduct enumerated above violates the contract;

c)    Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

d)    Whether the conduct enumerated above is a deceptive trade practice in violation of New Jersey law;

e)    Whether the conduct enumerated above is a deceptive act or practice in violation of New York law; and

f)    What is the appropriate measure of damages.

76.     The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class and Subclasses consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to TD's records. TD has the administrative capability through its computer systems and other records to identify all members of the Class and Subclass, and such specific information is not otherwise available to Plaintiffs.

77.     It is impracticable to bring the individual claims of the members of the Class and Subclass before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

78.     Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by TD, as described herein.

79.     Plaintiffs are more than adequate representative of the Class in that Plaintiffs are TD checking accountholders and have suffered damages as a result of TD's contract violations. In addition:

a)     Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

b)     There is no conflict of interest between Plaintiffs and the unnamed members of the Class or Subclasses;

c)      Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d)      Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

80.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

81.     TD has acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making appropriate corresponding declaratory relief with respect to the Class and Subclasses as a whole.

82.     All conditions precedent to bringing this action have been satisfied and/or waived.

## COUNT ONE

### BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(Individually and on Behalf of the Class)**

83.     Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

84.     Plaintiffs and all members of the proposed Class contracted with TD for checking account services, including debit card services.

85.     TD breached promises made to Plaintiffs and all members of the proposed Class when, as described herein, TD charged OD Fees as a result of transactions that did not overdraw a checking account, on APPSN Transactions.

86.     In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to

their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

87.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

88.    The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

89.    TD has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, TD should not have used its discretion to charge OD Fees on APPSN Transactions. The Account Documents do not provide any basis for TD to charge OD Fees on APPSN Transactions.

90.    Plaintiffs and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

91.    Plaintiffs and all members of the proposed Class have sustained damages as a result of TD's breaches of the contract.

## COUNT TWO

### VIOLATION OF N.J. STAT. ANN. § 56:8-1, *et seq.*
### NEW JERSEY'S CONSUMER FRAUD ACT
**(On Behalf of the New Jersey Subclass)**

92.    Plaintiffs repeat and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

93.    Ms. Hayes, who has suffered injury in fact and has lost money or property as a result of TD Bank's violations of New Jersey's Consumer Fraud Act ("NJCFA"), alleges this cause of action as a class action.

94.    The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise…." N.J. Stat. Ann. § 56:8-2.

95.    TD Bank entered into contracts with its consumer customers in which TD Bank chose the language to bind the parties relating to describing and disclosing the circumstances when TD Bank was authorized to assess and collect fees for overdrafts.

96.    TD Bank has engaged in unlawful conduct as a general business practice by breaching those contracts and misrepresenting its practices in the contracts.

97.    By engaging in the above-described practice and the actions and omissions herein alleged, TD Bank has committed one or more unlawful acts in violation of the NJCFA.

98.    Ms. Hayes justifiably relied on TD Bank's contracts, disclosures, representations, and omissions in expecting that TD Bank would implement its policies and procedures consistent with its contracts and disclosures.

99.    TD Bank intended for customers to rely on the contracts and disclosures with regarding to how it would implement its policies and procedures, including the manner in which it imposes fees on its customers.

100.    Had Ms. Hayes and the Class known the actual facts or legal implications of those acts, they would have avoided the balance inquiry fees discussed in this complaint. Therefore, a causal relationship exists between TD Bank's unlawful conduct and the ascertainable losses suffered by Ms. Hayes and the New Jersey Subclass.

101.    By reason of the foregoing, TD Bank has been improperly and unjustly enriched to the detriment of Ms. Hayes and the New Jersey Subclass in an amount to be proven at trial. Ms. Hayes and the New Jersey Subclass are entitled to have disgorged and restored to Hayes and the New Jersey Subclass members all improperly taken monies as a result of their conduct as alleged herein.

102.    TD Bank's conduct caused Ms. Hayes and New Jersey Subclass members to suffer an ascertainable loss. In addition to direct monetary losses, Ms. Hayes and the New Jersey Subclass have suffered an ascertainable loss in that they received less than what was promised to them by TD Bank in their account agreement and other disclosure forms. Therefore, Ms. Hayes and the New Jersey Subclass are entitled to recover such damages, together with appropriate penalties, including treble damages, and legal fees and costs.

103.    As a result, Ms. Hayes and the New Jersey Subclass have suffered an ascertainable loss of monies and, pursuant to NJ Stat. § 56:8-19, they are entitled to threefold damages.

## COUNT THREE

### VIOLATION OF N.Y. GEN. BUS. LAW § 349, *et seq.*
### NEW YORK GENERAL BUSINESS LAW
**(On Behalf of the New York Subclass)**

104.    Plaintiffs repeat and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

105.    TD's practice of charging fees on APPSN transactions violates New York General Business Law § 349 ("NYGBL § 349").

106.    NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in New York.

107.    As a bank with multiple branch locations in New York, TD conducted business, trade, or commerce in New York State.

108.    In the conduct of its business, trade, and commerce, and in furnishing services in New York, TD's actions were directed at consumers.

109.    In the conduct of its business, trade, and commerce, and in furnishing services in New York, TD engaged in deceptive, unfair, and unlawful acts or practices, in violation of NYGBL § 349, including but not limited to the following:

a.    TD misrepresented material facts, pertaining to the sale and/or furnishing of banking services to the New York Subclass by representing and advertising that it would only charge overdraft fees when an overdraft actually occurred; and

b.    TD omitted, suppressed, and concealed the material fact that it would charge fees on APPSN transactions.

110.    TD systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Mr. Burns and members of the New York Subclass.

111.    TD willfully engaged in such acts and practices, and knew that it violated NYGBL § 349 or showed reckless disregard for whether it violated NYGBL § 349.

112.    As a direct and proximate result of TD's deceptive trade practices, members of the New York Subclass suffered injury and/or damages, including assessment of OD Fees on APPSN transactions.

113.    Had Mr. Burns known he could be charged OD Fees on APPSN transactions, he would have made different payment decisions so as to avoid incurring such fees or opted out of OD protection.

114.    As a result of TD's violations of NY GBL § 349, Plaintiff Mr. Burns and members of the putative Subclass have paid and will continue to pay excessive fees to TD. Accordingly, they have suffered and will continue to suffer actual damages.

115.    Accordingly, Plaintiff Mr. Burns and the New York Subclass members are entitled to relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or legal fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class and Subclasses, demand a jury trial on all claims so triable and judgment including the following:

A.    Certification for this matter to proceed as a class action on behalf of the Class and Subclass;

B.    A declaration that TD's OD Fee policies and practices are in breach of its contract with accountholders;

C.      Restitution of all OD Fees improperly seized by TD from Plaintiffs and the members of the Class and Subclasses, as a result of the wrongs alleged herein in an amount to be determined at trial;

D.      Actual damages in an amount according to proof;

E.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F.      Reimbursement of costs and legal fees and expenses under the common fund doctrine and all other applicable laws; and

G.      Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Amended Class Action Complaint that are so triable.

Dated:  November 22, 2021                 Respectfully submitted,

                                          */s/ Kenneth J. Grunfeld*          
                                          Kenneth J. Grunfeld
                                            New Jersey Bar No. 026091999
                                          **GOLOMB SPIRT GRUNFELD, P.C.**
                                          1835 Market Street
                                          Suite 2900
                                          Philadelphia, PA 19103
                                          Telephone: (215) 985-9177
                                          kgrunfeld@golomblegal.com

                                          E. Adam Webb, Esq.*
                                            Georgia Bar No. 743910
                                          **WEBB, KLASE & LEMOND, LLC**
                                          1900 The Exchange, S.E.
                                          Suite 480
                                          Atlanta, GA 30339
                                          Telephone: (770) 444-9325
                                          Adam@WebbLLC.com

                                          *Attorneys for Plaintiff*

                                          * Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of November, 2021, I electronically filed the foregoing document with the clerk of court using the electronic case filing system, CM/ECF. The electronic case filing system sent a "Notice of Electronic Filing" to attorneys of record, who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Kenneth J. Grunfeld*

Kenneth J. Grunfeld
